**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BARBARA ANNETTE RUSSO, ) | No. CV 09-9322-PLA |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 29, 2009, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on March 3, 2010, and March 4, 2010.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 23, 2010, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 2, 1963.  [Administrative Record ("AR") at 73, 74, 76.]  She has a tenth grade education and past relevant work experience as a store manager and salesperson.  [AR at 80-81, 84, 86-87, 113-20.]

On July 19, 2004, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since January 19, 2004, due to chronic asthma, a heart condition, a hernia, and diabetes.  [AR at 12, 73-85.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 34, 39-44, 51, 59-63.]  A hearing was held on October 17, 2006, at which plaintiff appeared with counsel and testified on her own behalf.  A vocational expert also testified.  [AR at 258-77.]  On February 7, 2007, the ALJ determined that plaintiff was not disabled.  [AR at 9-20.]  The Appeals Council denied plaintiff's request for review of the hearing decision on June 29, 2007.  [AR at 4-8.]  On August 22, 2007, plaintiff filed a complaint in this Court in Case No. CV 07-5488-PLA.  [See AR at 323.]  On June 17, 2008, the Court entered judgment for plaintiff and remanded the case back to the ALJ for further proceedings.  [AR at 322-31.]  On remand, the ALJ held a hearing on June 9, 2009, at which plaintiff appeared with counsel and again testified on her own behalf.  A vocational expert also testified.  [AR at 818-33.]  On July 21, 2009, the ALJ issued an opinion again finding plaintiff not disabled.  [AR at 278-90.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

3

1    equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

2    Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

3    If the claimant's impairment or combination of impairments does not meet or equal an impairment

4    in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

5    sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

6    and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

7    perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

8    prima facie case of disability is established.  The Commissioner then bears the burden of

9    establishing that the claimant is not disabled, because she can perform other substantial gainful

10   work available in the national economy.  The determination of this issue comprises the fifth and

11   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

12   n.5; Drouin, 966 F.2d at 1257.

13

14   **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

15          In this case, at step one, the ALJ found that plaintiff has not engaged in any substantial

16   gainful activity since July 19, 2004, the date of her application for Supplemental Security Income

17   payments.  [AR at 283.]  At step two, the ALJ concluded that plaintiff has the "severe" impairments

18   of asthma, supraventricular tachycardia, and obesity.  [AR at 284.]  At step three, the ALJ

19   determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing.

20   [Id.]  The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to

21   "perform sedentary work[2] ... with standing/walking 2 hours in an 8-hour workday, sitting 6 hours

22   in an 8-hour workday, and avoidance of concentrated exposure to fumes, odors, chemicals, gases

---

24   [1]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
     Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

25   [2]    Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time
26   and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a
     sedentary job is defined as one which involves sitting, a certain amount of walking and standing
27   is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are
     required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a),
28   416.967(a).

and dust." [AR at 284.]  At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 289.] At step five, the ALJ found, based on use of the Medical-Vocational Rules as a framework and the vocational expert's testimony, that there are a significant number of jobs in the national economy that plaintiff is capable of performing. [AR at 289-90.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 290.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly consider: (1) the relevant medical evidence of record; and (2) plaintiff's subjective complaints and credibility. [Joint Stipulation ("JS") at 3-4.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    MEDICAL EVIDENCE**

Plaintiff contends that the ALJ failed to properly consider the relevant medical evidence concerning the frequency of her medical treatment for asthma exacerbations. [JS at 4-8.] Plaintiff also argues that a proper consideration of her medical record reveals that she meets the requirements of Listing § 3.03 due to her asthma. [JS at 8-9.]

To meet or equal the Listing, plaintiff has the burden of establishing that she meets or equals each characteristic of a listed impairment. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). "An impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment." Social Security Ruling[3] 83-19, at *2. An impairment "equals" a listed impairment when "the set of symptoms, signs, and laboratory findings in the medical evidence supporting a claim ... are at least

---

[3]    Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   equivalent in severity to the set of medical findings for the listed impairment." Id.  As relevant

2   here, Listing § 3.03B pertains to asthma with attacks (as defined in § 3.00C) "in spite of prescribed

3   treatment and requiring physician intervention, occurring at least once every 2 months or at least

4   six times a year," with inpatient hospitalizations for longer than 24 hours counting as two attacks.[4]

5   20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.03B.  Under § 3.00C of the Listing, "asthma attacks" are

6   defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive

7   treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational

8   bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R., Pt. 404,

9   Subpt. P, App. 1, § 3.00C.  Section 3.00C further provides that "[w]hen a respiratory impairment

10  is episodic in nature, as can occur with exacerbations of asthma ..., the frequency and intensity

11  of episodes that occur despite prescribed treatment are often the major criteria for determining the

12  level of impairment.  Documentation for these exacerbations should include available hospital,

13  emergency facility and/or physician records indicating the dates of treatment; clinical and

14  laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies

15  (ABGS); the treatment administered; the time period required for treatment; and the clinical

16  response." Id.  The section also explains that "[t]he medical evidence must ... include information

17  documenting adherence to a prescribed regimen of treatment as well as a description of physical

18  signs.  For asthma, the medical evidence should include spirometric results obtained between

19  attacks that document the presence of baseline airflow obstruction." Id.  "Hospital admissions" are

20  defined under §3.00C as "inpatient hospitalizations for longer than 24 hours." Id.

21      In the decision, the ALJ concluded that plaintiff "does not have an impairment or

22  combination of impairments that meets or medically equals one of the listed impairments." [AR

23  at 284.]  The ALJ noted that plaintiff in September 2008 told consultative examining physician Dr.

24  Homayoun Saeid that on average she had sought medical treatment for asthma exacerbations

25

26      [4]  Listing § 3.03A pertains to "chronic asthmatic bronchitis."  See  20 C.F.R., Pt. 404, Subpt.
27  P, App. 1, § 3.03A.  Since plaintiff contends that she meets or equals the Listing due to her
    "asthma exacerbations" (i.e., asthma attacks) and does not contend that she suffers from chronic
28  asthmatic bronchitis, the Court only considers plaintiff's alleged disability under Listing § 3.03B.

up to six times a year and that she had been hospitalized up to six times a year for asthma exacerbations with an average hospital stay of two days. [See AR at 287-88, citing AR at 726-31.] The ALJ concluded that the evidence "shows far fewer emergency room visits and hospitalizations for asthma exacerbation than alleged by [plaintiff]" and that her treatment records "do not reflect regular and ongoing treatment for asthma or other respiratory problems." [AR at 287.] Specifically, the ALJ concluded that the record shows that from 2005 to 2008 plaintiff had only six emergency room and urgent care visits (in August 2005, February 2006, November 2006, May 2007, January 2008, and May 2008) and two inpatient hospitalizations (January/February 2007 and November 2007) for asthma exacerbation. [AR at 287; see also AR at 285-86.] In other parts of the decision, the ALJ noted that plaintiff was also hospitalized from November 10, 2005, to November 12, 2005, for a complaint of chest pain and tachycardia [AR at 285; see also AR at 614-51 (noting that plaintiff also experienced shortness of breath)]; visited the emergency room and was then hospitalized from July 21, 2006, to July 23, 2006, due to complaints of chest pain and shortness of breath [AR at 285; see also AR at 510-29, 533-42, 663-706]; visited the emergency room on October 4, 2007, for asthma and tachycardia [AR at 286, 288; see also AR at 470]; visited the emergency room on February 8, 2008, for tachycardia and acute asthma exacerbation [AR at 286, 288; see also AR at 377-79]; and visited the emergency room on March 31, 2008, for tachycardia. [AR at 286, 288; see also AR at 772-89 (noting plaintiff's wheezing in addition to tachycardia).]

The Court has carefully reviewed the medical evidence and finds that the ALJ erred in selectively considering plaintiff's treatment records. First, the ALJ did not consider plaintiff's medical treatment from 2004. The record shows that plaintiff in 2004 visited urgent care once (on June 16, 2004 [AR at 770]) and the emergency room four times (on March 15, 2004 [AR at 563, 582], June 14, 2004 [AR at 594-95], August 16, 2004 [AR at 172-78], and November 26, 2004 [AR at 181-86]), for which she was admitted to the hospital once (from March 15, 2004, to March 16, 2004 [AR at 557-68, 582-83]), while she was experiencing, among other symptoms, shortness of breath, difficulty breathing, wheezing, respiratory distress, and tachycardia. Plaintiff also received pulmonary nebulizer asthma treatment from her treating physician on December 3, 2004. [See AR

1    at 162.]  Because plaintiff filed her application in July 2004, claiming that she has been unable to

2    work since January 2004 in part due to asthma and a heart condition, plaintiff's treatment records

3    from 2004 were relevant to the disability determination in this case, particularly with regard to

4    whether plaintiff's impairments meet Listing § 3.03B.  Accordingly, it was error for the ALJ to fail

5    to expressly consider these records.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error

6    for an ALJ to ignore or misstate the competent evidence in the record in order to justify his

7    conclusion); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ cannot

8    selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker,

9    695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore

10   evidence that suggests an opposite conclusion.") (citation omitted).  To the extent the ALJ

11   considered, but implicitly rejected plaintiff's relevant treatment records from 2004, this too was

12   erroneous.  Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the

13   ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the

14   reason why probative evidence has been rejected is required so that a reviewing court can

15   determine whether the reasons for rejection were improper.") (internal citation omitted).

16       Next, in addition to the asthma treatment administered by plaintiff's treating physician in

17   2004 described above, the ALJ also failed to mention in the decision that plaintiff received

18   treatment for asthma exacerbation from her treating physician on January 7, 2005 [AR at 204],

19   March 15, 2006 [AR at 227], and September 6, 2006.  [AR at 336.]  The treatment for asthma

20   exacerbation that plaintiff received from her treating physician and any treatment she administered

21   to herself at home,[5] in addition to the treatment she received in the emergency room, at urgent

22   care, and while hospitalized, may constitute the kind of asthma attack treatment described in

23   Listing sections 3.00C and 3.03B.  See, e.g., Martinez Nater v. Sec'y of Health and Human

24   Services, 933 F.2d 76, 78-79 (1st Cir. 1991) (remanding for further proceedings to determine if

25   a claimant met Listing § 3.03B who was hospitalized only twice in a two year period but who

26   _____

27       [5]   Plaintiff testified at the 2006 hearing that when her asthma symptoms are "not tolerable"
     she uses a nebulizer machine at home, which helps her to "stay out of the hospital."  [AR at 262.]

28

1   received asthma attack treatment that included inhalation therapy and intravenous medications

2   at home or from treating physicians on at least 14 occasions); Cole v. Heckler, 587 F.Supp. 496,

3   497-98 (W.D.N.Y. 1984) (ALJ improperly concluded that Listing sections 3.00C and 3.03B required

4   asthma treatment to be administered at a hospital in order to establish intensive treatment of

5   severe asthma attacks, where the plaintiff was able to treat his "severe recurring attacks ... short

6   of appearing in the emergency room"); Serrano v. Sullivan, 1990 WL 106796, at *2-3 (S.D.N.Y.

7   July 27, 1990) (ALJ erred in finding that plaintiff's asthma attacks lacked the frequency required

8   in §3.03B, where plaintiff at times treated her asthma attacks at home with a nebulizer and

9   sometimes went to the emergency room for asthma treatment).  The ALJ's failure to consider

10  plaintiff's asthma exacerbation treatment administered by her treating physician, which is relevant

11  to the disability determination in this case (especially concerning whether plaintiff meets Listing

12  § 3.03B), warrants remand.

13          In addition to the ALJ's failure to expressly consider all of plaintiff's treatment records from

14  2004 and the records concerning her asthma exacerbation treatment that she received from her

15  treating physician, plaintiff "strongly disagree[s] with the ALJ's assessment and characterization

16  of the documented frequency of her asthma exacerbations and ... treatment."  [JS at 4-5.]

17  Specifically, plaintiff contends that the evidence concerning her emergency medical treatments

18  (including emergency room visits, hospital admissions, and emergency treatments she received

19  from her treating physician) shows that she received emergency medical treatment for asthma

20  exacerbations seven times in 2004, four times in 2005, six times in 2006, six times in 2007, and

21  four times in the first five months of 2008. [JS at 8.]  Defendant, on the other hand, contends that

22  "although there are several treatment visits in the record, including emergency care visits, the

23  evidence is insufficient to meet [the] Listing" because not all of the treatment records cited by

24  plaintiff provide evidence of the types of treatment and symptoms required to show that she

25  suffers from asthma with attacks under Listing § 3.03B.  [JS at 12.]

26          The record shows that plaintiff in 2005 visited the emergency room twice (on August 5,

27  2005 [AR at 601-03], and November 9, 2005 [AR at 606-13]), for which she was admitted to the

28  hospital once (on November 10, 2005, to November 12, 2005 [AR at 614-51]), while she was

1  experiencing, among other symptoms, difficulty breathing, wheezing, chest pain, and tachycardia.
2  As explained above, plaintiff also received treatment from her treating physician on January 7,
3  2005, for acute asthma exacerbation.  [See AR at 204.]  In 2006, plaintiff visited the emergency
4  room three times (on February 7, 2006 [AR at 547-53, 661-62], July 21, 2006 [AR at 536-42], and
5  November 16, 2006 [AR at 503-06, 530-32]), for which she was admitted to the hospital once
6  (from July 21, 2006, to July 23, 2006 [AR at 510-29, 533-42, 663-706]), while she was
7  experiencing, among other symptoms, difficulty breathing, wheezing, labored breathing,
8  respiratory distress, chest pain, and tachycardia.  As explained above, plaintiff also received
9  treatment from her treating physician for asthma exacerbation on March 15, 2006 [AR at 227], and
10 September 6, 2006.  [AR at 336.]  In 2007, plaintiff visited urgent care once (on May 3, 2007 [AR
11 at 763]) and the emergency room three times (on January 26, 2007 [AR at 478], October 4, 2007
12 [AR at 470], and November 23, 2007 [AR at 442-75]), for which she was admitted to the hospital
13 twice (from January 26, 2007, to February 1, 2007 [AR at 483-503], and from November 23, 2007,
14 to November 26, 2007 [AR at 448-51]), while she was experiencing, among other symptoms,
15 wheezing, decreased breathing, respiratory distress, shortness of breath, and tachycardia.  In
16 2008, plaintiff visited the emergency room four times (on January 6, 2008 [AR at 414-15],
17 February 8, 2008 [AR at 377-79], March 31, 2008 [AR at 772-89], and May 26, 2008 [AR at 368-
18 75]), while she was experiencing, among other symptoms, wheezing, decreased breathing,
19 respiratory distress, and tachycardia.

20        In the decision, the ALJ apparently attempted to parse out plaintiff's emergency room,
21 urgent care, and hospitalization treatments into two main categories: 1) those concerning plaintiff's
22 treatment for asthma exacerbations; and 2) those concerning her treatment for tachycardia.  [See
23 AR at 287-88.]  Plaintiff, on the other hand, groups all of these treatments together, arguing that
24 her symptoms of "shortness of breath, wheezing, chest pain, and rapid heart rate are all related
25 to her chronic asthmatic condition."  [JS at 8.]  The ALJ's apparent separate consideration of the
26 times on which plaintiff was treated for tachycardia from the times she was treated for asthma is
27 not clearly without error, as the medical evidence indicates that plaintiff's asthma and tachycardia
28 symptoms are interrelated.  Plaintiff's treatment records show that she was treated for breathing

10

difficulty, such as distressed breathing and wheezing, at the same time she was treated for tachycardia [see, e.g., AR at 178, 183-86, 470, 478, 503-06, 582, 594-95, 614-15, 772], and, as the ALJ acknowledged in the decision [AR at 287-88], plaintiff's physicians have concluded that her tachycardia is likely caused by her use of asthma inhalers. [See AR at 353-54, 582.] Further examination of this issue is warranted.

If all of plaintiff's treatments described above meet the definition for treatment of asthma attacks provided under § 3.00C of the Listing, it appears that plaintiff's impairments may have met or equaled Listing § 3.03B for asthma with attacks, as she required "physician intervention" for her asthma-related breathing problems (counting each of her inpatient hospitalizations as two treatments according to § 3.03B) at least six times for three out of the five years from 2004 to 2008. Specifically, she required such intervention seven times in 2004 (i.e., one hospitalization, four additional emergency room and urgent care visits, and one treatment from her treating physician for asthma exacerbation), four times in 2005 (i.e., one hospitalization, one additional emergency room visit, and one treatment from her treating physician for asthma exacerbation), six times in 2006 (i.e., one hospitalization, two additional emergency room visits, and two treatments from her treating physician for asthma exacerbation), six times in 2007 (i.e., two hospitalizations and two additional emergency room and urgent care visits), and four times in the first five months of 2008 (i.e., four emergency room visits). At the same time, however, because it is difficult for the Court to discern from the treatment notes how long plaintiff's asthmatic episodes lasted and what kind of asthma treatment she received during each of the treatments described above, and the ALJ did not explain in the decision why he found plaintiff's symptoms and treatments insufficient to meet the requirements of Listing sections 3.00C and 3.03B, the Court cannot conclude that plaintiff definitively meets or equals Listing § 3.03B, which requires "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00C. Rather, the ALJ is in a better position to evaluate the medical evidence in this regard (i.e., with the assistance, if required, of a medical expert) and the Court thus finds remand on this issue appropriate. See Marcia v.

1  *Sullivan*, 900 F.2d 172, 176-77 (9th Cir. 1990) ("Where the Secretary is in a better position than
2  this court to evaluate the evidence, remand is appropriate") (citing McAllister v. Sullivan, 888 F.2d
3  599, 603 (9th Cir. 1989)); see also Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) ("If
4  additional proceedings can remedy defects in the original administrative proceeding, a social
5  security case should be remanded.").

6       In remanding for further consideration of whether plaintiff's impairments meet or equal
7  Listing § 3.03B, the Court is also mindful of defendant's contention that plaintiff has not
8  demonstrated "'adherence to a prescribed regimen of treatment,' as required by the Listing" [see
9  JS at 11, 14, 16, citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.00B, C], and plaintiff's contention
10 that her "financial limitations preclude her from getting regular and intensive treatment as would
11 be desired" for her impairments.  [See JS at 21.]  Although the record supports defendant's
12 contention that plaintiff was not always fully compliant in obtaining follow-up asthma treatment
13 after her emergency room visits and hospitalizations [see, e.g., AR at 227, 470], plaintiff testified
14 at the June 2009 hearing that she could not afford to pay for certain medical treatment, as she did
15 not qualify for County medically indigent programs, such as MediCal, because she does not have
16 proof of income. [See AR at 826-27.] Even where the Listing requires disabling symptoms despite
17 adherence to prescribed treatment, the Ninth Circuit has held that "[d]isability benefits may not be
18 denied because of the claimant's failure to obtain treatment [she] cannot obtain for lack of funds."
19 Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (a claimant's inability to afford treatment
20 cannot by itself prevent a finding that a claimant meets a listed impairment, even where
21 compliance with treatment is "a condition *precedent* to satisfaction of the disability criteria") (citing
22 Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (while remediable conditions are not
23 generally disabling, that condition is disabling if claimant cannot afford prescribed treatment);
24 Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("the medicine or treatment an indigent person
25 cannot afford is no more a cure for [her] condition than if it had never been discovered"); Teter v.
26 Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985) (inability to afford surgery justifies failure to
27 undergo); Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent
28 purposes of the Social Security Act to deny benefits to someone because [she] is too poor to

1    obtain medical treatment that may help [her]."); <u>Tome v. Schweiker</u>, 724 F.2d 711, 714 (8th Cir.

2    1984) (Secretary should consider lack of resources in determining whether condition is

3    remediable); SSR 82-59 (a person who otherwise meets the disability criteria may not be denied

4    benefits for failing to obtain treatment that she cannot afford)); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Lemoi v. Chater</u>,

5    1996 WL 134247, at *4 (D. R.I. March 18, 1996) ("a person who suffers from asthma attacks

6    requiring physician intervention [at least] six times a year is disabled [under Listing § 3.03B]

7    notwithstanding his or her justifiable failure to follow any prescribed treatment").  On remand, the

8    ALJ is directed to consider whether plaintiff was able to afford follow-up medical treatment, and

9    how that ability or inability impacted her failure to fully comply with recommended treatment, when

10    considering if she meets or equals Listing § 3.03B.

11

12    **B.**    **PLAINTIFF'S CREDIBILITY AND SUBJECTIVE SYMPTOMS**

13         Plaintiff contends that the ALJ failed to consider her subjective symptoms and did not

14    properly reject her credibility.  [JS at 17-21.]

15         In the decision, despite finding that plaintiff's medical condition would reasonably produce

16    the alleged symptoms, the ALJ found plaintiff's statements "concerning the intensity, persistence

17    and limiting effects" of her symptoms to be "not credible to the extent they are inconsistent with

18    the ... residual functional capacity assessment."  [AR at 288.]  The ALJ discounted plaintiff's

19    subjective complaints of the limiting effects from her impairment because (1) plaintiff's subjective

20    complaints are out of proportion to the objective medical findings; (2) there is no evidence of

21    disuse muscle atrophy compatible with plaintiff's alleged level of inactivity; (3) she did not visit the

22    emergency room and was not hospitalized as frequently as she alleged to Dr. Saeid; and (4) she

23    was not fully compliant with the follow-up care recommended by emergency room and hospital

24    physicians.  [<u>See</u> AR at 288-89.]

25         As the ALJ's credibility determination was based, in part, on his analysis of the medical

26    evidence, which the Court finds was improper for the reasons discussed above, the ALJ is

27    instructed to reassess plaintiff's credibility after he has reconsidered the medical evidence.

28    Further, because "benefits may not be denied to a disabled claimant because of a failure to obtain

treatment that the claimant cannot afford" (<u>Warre v. Comm'r of Social Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006)), the ALJ is also instructed to determine on remand whether plaintiff's lack of full compliance with recommended follow-up treatment is attributable to her inability to afford such treatment.  <u>See</u>, <u>e.g.</u>, <u>Johnson v. Astrue</u>, 2009 WL 2579525, at * 13 (C.D. Cal. Aug. 19, 2009) ("the failure to seek treatment where a plaintiff cannot afford to seek it is not an appropriate basis upon which to discount a claimant's credibility").

## VI.

## <u>REMAND FOR FURTHER PROCEEDINGS</u>

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  <u>See</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the medical evidence and to reconsider plaintiff's credibility.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: December 1, 2010

_Paul L. Abrams_

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE